Our next case is number 2012-1258 CROWN PACKAGING v. BALL Hey, Mr. Heist. Good morning, Your Honor. May it please the court. This case is about, as the court undoubtedly already knows, a very simple invention. It's to do with a cannon. While the differences between the claimed subject matter and the prior art are subtle, they're very important in terms of the amount of metal saved. And so the invention, although simple, is of great commercial significance. When this case was here the first time, in fact, I looked at the briefs and oral argument, and my understanding is that you argued at that time that there was an issue as to anticipation because the district court's claim construction required bending of more than 10 degrees. Correct? Your Honor, what we argued was that... You relied on the 10 degree limitation, did you not? We argued that there was an issue of fact with regard to whether that limitation was satisfied. But we also said in our brief that the claim construction, that particular claim construction, was not an issue on appeal. What we argued was that the claim required bending upwardly and that there was a disputed issue of fact as to whether the prior art bent upwardly at all, whether 10 degrees or not. I don't recall that you took issue with the 10 degree claim limitation, did you? In your briefs the first time around? We did not take issue. In fact, we specifically said in our brief that that particular claim construction was not an issue on the appeal. And the reason it wasn't an issue and the reason why it wasn't addressed in this court's opinion, I submit, was because it wasn't necessary for the decision. The decision below was that there was anticipation. And the argument that we were advancing was that there was a fact issue as to whether there was any bending at all in the prior art. And actually there was colloquy... But you also argued that there was a fact issue as to whether there was more than 10 degrees, right? Well, we pointed out that there was disputed, we thought, a disputed issue of fact on that as well. But that issue was not necessary for the court's resolution of the first appeal, which is why I submit that it was not addressed in the court's opinion. What was in the court's opinion was that there was a disputed fact issue as to whether the prior art bent upwardly at all. Their expert suggested that the prior art bent upwardly and bent upwardly by more than 10 degrees. The way the opinion summarizes his testimony, it was bent by more than 10 degrees. And our expert's contrary opinion was that the prior art could not have bent upwardly at all, which was also a requirement of the claim. So the issue of the angle of the bend, whether it's greater than 10 degrees or not, was in dispute at the first time, during the first appeal. It was mentioned and argued, but it was not necessary for the decision, which is why in our briefing we said that that construction of the district court was not an issue advanced on appeal. I submit to you it could have been raised, but it didn't need to be raised in order for Crown to obtain the relief that it was seeking. Well, what do we do with the fact that it was raised and it was argued? And you made those arguments. Well, I would point, Your Honor, to the Leitrim case. It has a quote from it. It says, the issue is not what NEC could supposedly have argued, but rather what it was required to argue, or indeed what it could properly have argued. And I believe it's in the Engel case that it doesn't matter what's argued. It matters what was necessary to argue in order for the court to resolve the issues before it. What was necessary for the decision was that there was a disputed fact issue on the broader question of whether the prior art disclosed any bending whatsoever. Their expert said the prior art disclosed bending. Ours said that there was no bending. And the court resolved that issue by finding that there was a fact dispute and remanded it to the district court. Isn't the argument that there's no bending the same thing as saying that there's bending less than 10 degrees? No. There's no bending at all, irrespective of how much. But you repeatedly argued to our court last time the 10-degree limitation. You didn't argue to our court no bending. You argued the 10 degrees. We argued both, Your Honor. Well, you argued both. So why shouldn't you be held by both, held to both? Because the determination of, well, first of all... Did we conclude there was no bending or did we conclude there was no bending by 10 degrees? You concluded that there was a fact dispute as to whether there was any bending at all. That's the way at least I read the opinion of the panel. And there was colloquy at the last argument as to whether or not that issue was, as I understand it, before the court. And my answer was no, because it was not before the court. The court didn't need to resolve that issue because there was a fact dispute on the broader question. And the broader question is whether the prior art disclosed any bending whatsoever. I don't think your characterization of the opinion is quite right because I think what we said was one expert said there was bending of more than 10 degrees and the other expert said there was no bending and that that raised a genuine issue. And more specifically, it's on our opinion that simply put, Mr. Scranton, a plan that to arrive at the seam can end shown on Tio's Figure 4, the unseen end of Claim 2 must have necessarily have bent upwardly around an inherent chuck by more than 10 degrees. Your Honor, that's correct. And then the next sentence goes on and says, In contrast, Mr. Hyam, our expert, opined that one could never arrive at Figure 4's seamed end starting with an unseen end that would require upward bending during seaming because that would necessitate a neck can contrary to the one depicted in Figure 4. It seems like there's a dispute then and it's centered around the 10 degree bend. There was a dispute as to whether there was any bending and if there was a dispute about that, there was also a dispute about whether there was bending by more than 10 degrees. Our expert's opinion in his expert report is that the prior art could not bend upwardly, was not adapted to be bent upwardly at all because the can in the prior art was not necked and his opinion was that if the can wasn't necked, the end, which is not explicitly disclosed, could not have been bent upwardly because the can can't neck in if it starts out unnecked. So his opinion was that there was no bending at all and certainly no bending more than 10 degrees. Our opponent's expert, his opinion was that there was not only bending, but bending by more than 10 degrees. Why mention the 10 degree limitation if it wasn't part of the decision? The court could have simply said one expert said there was bending and one expert said there wasn't and therefore there's a conflict and that's not what we said. We said one expert said there was bending in more than 10 degrees and the other expert said there was no bending. It seems to recognize that the 10 degree limitation has something to do with this. Well, the 10 degree limitation decided by the lower court, as we said in our brief, was not an issue that the court needed to resolve on that in the last appeal. What the court needed to resolve and what I submitted did resolve is that there's a fact issue as to whether the prior art bent at all. The appellee is arguing. Paul is arguing. I'm looking at your brief from last time here at 89-65 through 72 and you focus extensively on the 10 degrees. Always. Look, page 89-66. Specifically, Toyo does not expressly teach that a first portion of the canden wall is deformed such that it is bent upwardly around a chuck juncture at all, let alone by more than 10 degrees as required by the district court. Right. In Wanda 89-72, Paul's expert submission should have precluded summary judgment. Figure 4 was not necessarily formed by bending the unseen can end referenced in Toyo upwardly by more than 10 degrees. Granton conceded it was possible that the seamed end in Toyo's figure 4 could have been achieved by, quote, bending the chuck wall angle at less than 10 degrees, quote. And then you look down at the discussion about Granton, his excerpted testimony, and it's all about whether it was 10 degrees more or less. This is your brief. You're arguing to us extensively about the 10 degrees. Your Honor, but we also said on page 48 of the brief, in 49, that while the district court had read this limitation into the claim, we said on page 49 the district court's addition of these further claim requirements, particularly the requirement for bending upwardly by more than 10 degrees, is not an issue in this appeal. In other words, we were saying the court doesn't need to resolve that claim construction issue in order to grant the relief that Crown was seeking in that appeal. Look again at two bites of the apple. You're saying the court doesn't have to resolve this issue, and then you turn around and you argue the very issue. And it's the very issue in some of the language that Judge Moore cited out of your brief is contained almost verbatim in our prior opinion. The question of waiver, Your Honor, turns on what a party was required to argue. Not what they did argue, but what they were required to argue. What we were required to argue was that the factual dispute between the experts as to whether there was any bending at all was sufficient to reverse the district court's grant of summary judgment. That's what we argued. You argued both. You argued no bending required. You also argued, and if bending is required, if this doesn't disclose it by more than 10 degrees. That's correct. So given that you accepted the claim construction and made that argument, why aren't you bound by it? Because looking back at our court's opinion, we certainly cite the whole dispute over whether it's more or less than 10 degrees. Your Honor, my reading of the court's opinion was that the court did not decide whether the claim required bending more than 10 degrees because it didn't need to decide that in order to resolve the appeal. Maybe the court didn't decide it because the court understood you to be accepting it, not disputing it, and then going on and just arguing whether this reference did or didn't disclose it. We didn't have to argue what the reference disclosed. We had to argue that there was a fact dispute because we didn't have the burden of proof on anticipation. Our job was to show this court, as we did, that there was a fact issue that precluded the grant of summary judgment, which I submit is what we demonstrated and what I believe the court's opinion found. Okay. Now suppose that you didn't... I understand you're pointing in your brief to the fact that there's a sentence that says the district court's claim construction is not at issue in this appeal. I understand that. I also understand there are places in your brief before where you said it doesn't bend at all, much less more than 10 degrees. I get that. Suppose you didn't have the preparatory sentence, claim construction is not at issue, or the at all stuff. Suppose that all you argued throughout your entire brief was this isn't right. This does not demonstrate bending by more than 10 degrees. Suppose that's the only thing you argued throughout your brief. Are you then way from later coming up on appeal and saying 10 degrees is in a limitation? Well, I would think if that's the only thing we argued and that would have been what the court decided, then I suppose we would have been bound. But that is not the way I understood the argument and nor is it the way that I read this court's opinion. Is there any place in your brief where you said you disagreed with the court's claim construction? No, what we said in our brief was we don't believe that that's an issue on appeal. It became an issue. Okay, but that leaves us, though, you're not disputing it. Well, it also sounds like we are disputing it, but it's not a ripe issue, and it wasn't really a ripe issue at that time. It became a ripe issue. It could have been a ripe issue if you were arguing at that time for invalidity purposes, and now you're arguing for infringement purposes. We're not asking the claim to be construed a different way for infringement and validity. It's got to be construed the same way we accept that, and it can be construed the same way for both infringement and validity. The claim requires, quite apart from the district court's construction, requires that the end be bent upwardly during seaming. The prior art, the evidence of record shows that that didn't happen. At least there's a disputed fact issue on that. Let me ask you, going from the issue of waiver or estoppel to the question of whether there was a disclaimer. My understanding is that you're saying there was not a disclaimer in the prosecution history that there was no discussion of a pre-bent can-end wool, right? I'm sorry, Your Honor, I missed the question. You're saying the district court found a disclaimer in the prosecution history, right? Yes. And you're saying there was no disclaimer because the disclaimer related only to a can-end wool that was not pre-bent. I think what we're saying, and I know what we're saying, is that the file wrapper admits to more than one reasonable interpretation and that what Crown was arguing repeatedly was that the prior art didn't disclose an end that had an angled wall and where the upper portion of the wall was bent upwardly during the seaming process. So are you saying now there's no disclaimer at all in the prosecution history? No, I think we've conceded in our briefing. I think it's correct. I think the district court was correct to find that there was a disclaimer of ends that were not bent upwardly during seaming to become substantially cylindrical. That argument was repeated multiple times. It was included in the examiner's statement of reasons for allowance where we say the district court went off into error was by adding a further requirement of bending upwardly more than 10 degrees. That argument, we submit, was taken out of the district court, took one sentence out of context. We're saying that the file wrapper looked at in its totality, which is what I understand this court requires, showed that the argument that was being made was that the prior art did not show a can end that had an angled wall and that was bent upwardly during seaming by whatever amount so that after the bending, the end became substantially cylindrical. So the reference to 10 degrees was a mistake? I think it was a mistake by the district court. What about by your expert who said 10 degrees? No, I don't think so. What he was saying to the… But he said 10 degrees. Well, he said it in a very specific way. What he said was if you put the prior art together as the examiner suggested and you bent the end the way conventional thinking required, if you developed a chuck in order to do what the examiner was suggesting and you bent upwardly less than 10 degrees, the resulting can end would not become substantially cylindrical, consequently would not have the pressure performance that the invention was looking for, and therefore it would not have been obvious to combine the two. That's a far cry from saying our invention requires bending upwardly by more than 10 degrees and the prior art didn't do that. That's not what he said. Okay. I understand your argument. You've run over your time. We'll give you two minutes for rebuttal. Thank you. Mr. Lucan. Good morning. John Lucan, Dinsmore & Scholl for Kelly Ball. If I could turn first to the waiver argument that the court addressed extensively during Mr. Heist's argument. The starting point for the waiver analysis is what the decision of the court below was, and in the decision on invalidity anticipation below, the standard, the barrier that the district court applied in determining whether the JP 323 reference did or did not meet the bending element was clearly the higher standard of the 10 degrees or more. And before Judge Rice on that decision, Crown argued the same way that they did before this court, before the panel in the first appeal. They argued both that our experts supposedly said that there was bending of more than zero but less than 10, and that would not have flown under the claim construction that they're asking for today. That's the point of Judge Moore. You made quoting from their brief, which in the first appeal, which we cited in our brief here, where they argued both ways. They argued that Mr. Heist said there isn't any bending, but they also argued extensively that our expert had supposedly conceded that there was bending of less than 10, and they described that both to this court and to Judge Rice below as precluding summary judgment because if it bends less than 10, it cannot anticipate. So they embraced the decision, the claim construction that they had previously challenged. And while their footnote in their brief did note that they had challenged it before, that they had challenged it at the marking stage, I think as your question indicated, Judge Dyke, they definitely did not indicate that they were challenging it before this court. They were accepting it. It gave them more comfort. It made my task a lot harder to defend the 102 determination of Judge Rice if I had to fight all the way over 10 degrees, and they chose to use both types of proof as to that 10 degrees before this court. The decision of the court below clearly framed it in terms of 10 degrees or more. This court contrasted 10 degrees and less than 10 degrees. This court contrasted more than 10 degrees and nothing. The court's reference to Mr. Higgum, I'm not sure I'm getting his name right, they didn't say, and he said it's less than 10 degrees. They said he said no bending. I think the court in discussing the dispute framed the dispute as more or less than 10. Show me where. Judge, I think that was the standard that was applied. Show me where the court framed it as more or less than 10. I think that's in the beginning portion of the discussion in describing what each of the experts is testifying to, where they note that Mr. Hyam is saying that it's no bending at all as contrasted to Mr. Scranton whose testimony we were relying upon was more than 10. No bending at all in contrast to 10 is the way I said it, and you said no, the court laid it out as more or less than 10. I don't see that the court laid it out as more or less than 10, and I want you to show me where if I'm mistaken. Judge, in grappling with the facts, the court contrasted it. I agree that the court did not expressly address the claim construction. It did not expressly say whether the claim required 10 or more. Where did it make it clear that it was looking at more or less than 10 degrees as opposed to looking at more than 10 degrees or no bending at all? Your Honor, the court did not say that in framing what the claim required. I agree with that. It was in the district court decision where the judge clearly said the standard, the hurdle that Ball has to overcome to establish 102 anticipation here is bending more than 10. Because even in the Federal Circuit opinion, the very first sentence, Crown argues anticipation, the second sentence, the parties disagree as to whether Toyo inherently discloses the upward bending of a can-end wall or a chuck wall. Nothing even in there about 10 degrees. It's basically saying the parties disagree about whether there's any bending at all. Your Honor, I was only referring to in discussing the specific positions of the expert that ours said more than 10, and he had to say that because that was the standard that the district court had applied below, which Crown went out of its way in its brief to say that it was not disputing. Crown's brief acknowledged that there had been a dispute on claim construction originally, and Crown chose not to challenge that before this court, and Crown offered extensive proof both ways. Crown did not simply say there's no bending, so we win either way and keep the door open. Crown argued extensively. There was a third argument that this court did not cite, but that Crown made extensively throughout its brief and we had to respond to. Same argument they'd made below, and that was the one that you quoted earlier, where they said that our expert had not only suggested bending of more than 10, but he had alternatively suggested, and they described that as a concession, that the bending of the Japanese reference would be between 0 and 10, and Crown argued below and to this court that that does not suffice. But that's not the same thing as an accepting of the claim construction. I mean, that's just them arguing in the alternative. They clearly were making multiple alternative arguments in their brief. That's not a concession. Judge, if that was arguing in the alternative, then the suggestion that they were not challenging the claim construction below here should have said that they were arguing in the alternative. The case was briefed and argued below with both today's claim construction and infringement issue and the anticipation issue briefed and argued simultaneously, and Crown below had to pick or choose. For Crown to argue both ways on one would have locked them in on the other. Crown elected below to accept the district court's construction, giving us a much harder argument on anticipation, but giving them an easier argument to make on infringement. In fact, below, even though they don't repeat it here, below they actually factually suggested that we did not bend more than 10, that we bent by less than 10, and that's an argument they could not have. If the claim construction, to be consistent with what they argued up here on invalidity, when the district court made the decision on invalidity below and reserved the decision as moved on infringement, the district court held us and held himself to the higher standard. Does the mandate rule require that the issue actually has been decided? It requires that it be decided by the court below, and it was. It requires that it not be, that it be within the mandate, or I'm sorry, within the judgment below, and it was, and that it either be decided against him or not be raised on appeal, but the mandate rule simply requires that it not be addressed, not be reserved, not be remanded, and it was not reserved or remanded by this court. This court took Crown and it's worth. But if the court didn't decide it, nowhere is there a claim construction. If the court, well the court wasn't asked to decide it, and Crown argued it both ways, that's a waiver. Had the court gone on and decided it, had the court accepted the other argument that they made? I guess if we were in the original decision, if we were going with a different claim construction, that is any bending would be an infringement, that we wouldn't have characterized the Scranton expert as saying bending more than 10 degrees. They would have said there's a conflict here because one expert says there was bending and the other expert says there wasn't bending. Yes, that is correct, Your Honor. That certainly would have been true too. And had the court, well the court could have, but the court would not move on to address the merits of the claim construction where the appellant has expressly indicated that while they had disputed that claim construction early in the case during the Markman hearing, that on the summary judgment briefing and before this court, they weren't challenging it and in fact they were relying upon the claim construction by arguing both that it didn't bend at all and that it bent by less than 10 degrees. So while of course this court does have authority as an appellate court to revisit the claim construction, there was absolutely no need or opportunity to do in this case because Crown advanced arguments and asked this court to reverse based on the 10 degrees for bending more, the higher standard that they're now trying to ensure and specifically said that they had disputed it earlier. If the court had gone on and actually decided it, I think we'd have an estoppel issue, but the fact that it didn't go all the way to estoppel because this court didn't address the issue and rule it in a particular way doesn't mean that they didn't waive the issue. If I could, with my remaining time, I'd like to turn to the actual disclaimer, which I think can be more accurately characterized as simply a claim construction issue because this is not a dispute. As many of the cases that Crown relies upon in this court's jurisdiction, between one party suggesting that a claim term has a plain meaning and the other party arguing to import something that isn't there, we disagree over what was disclaimed. Mr. Heist stood here today and reiterated what is in, I think, five or six pages throughout the brief, that even though originally they said that these deforming and bending claim elements require just an alteration of the shape and don't require anything else, Crown has now accepted Judge Rice's construction that they require that the upper portion of the cannon wall become substantially cylindrical. That become is relatively important because if it bends by ten degrees or less throughout the specification and throughout the file history, Crown made clear that that isn't becoming substantially cylindrical. They described the prior art bending as basically being from vertical to vertical. In fact, at the risk of plunging into the decision of the court in the first case, the panel in the first case described the invention as a change in the can structure from a can-end angle, an overall can-end angle, which is described as angle C both for the prior art in figure two and for the invention in figure four. That's the angle of the entire can-end wall. It describes the prior art as described in the specification as consistently being below 20. It described the invention as increasing that can-end angle to 20 or more. Judge Rice's decision is correct because Crown needed to distinguish that can-end wall that simply had a larger angle from the prior art once JP-323 came up, which was well after the specification was written and was well after the initial patents had been issued in Europe and in the 634 patent here. When challenged by the examiner, Crown defended that large angle as being patentable, notwithstanding JP-323 and its clearly bigger angle. At least that's how the examiner understood it, by pointing to their method of seeming, and their method of seeming has three elements. It starts with the before shape of the can-end, it finishes with the after shape of the can-end, and it describes what happens in between. And in response to the first two office actions in the 875 application and in Mr. Haim's declaration, paragraph 52, which is right after paragraph 51 that Crown talks about throughout most of the brief, in all of those locations, Crown emphasizes that this is allegedly patentable because you have to, even though there's a method here, you have to take into consideration the structure before and the structure after in order to determine whether the method changes it enough to be patentable. The before, as this court's decision in the first case makes clear, the before in the prior art is 20 degrees or less along the entire can-end wall. The before in the patent in the description of the invention at the very beginning in columns 1 and 2 is described as 30 to 60, and some of the later description in columns 4 and 5 they stretch to 20 to 60, but it's always described as 20 degrees or more. So you're starting at 20 and you bend into an upper chuck wall, and remember the chuck has two walls and the can-end is consistently described as only having one wall that has that 20 degrees or more. So you've got a 20 degree angle that has to become substantially cylindrical. The end is agreed by everybody at this point. It's got to be up there, so you bend it against that chuck that has a 4 degree angle, plus 4 to minus 4, from 20, 16 degrees. There's 5 or so degrees of springback. Mr. Hyam made that clear in his declaration. The other declaration submitted simultaneously, 5 degrees, so it goes in 16, it comes back 5. You're clearly very well-versed in this technology and shockingly excited about it, which is great. But can you just tell me what sentence you think is the clear and unmistakable disclaimer? Because our precedent requires such a high level of clarity, and that's what I see lacking. So your explanation is fabulous by way of background, but where is the clear and unmistakable disclaimer? Your Honor, your cases talk about the totality of the circumstances, and that is what Judge Rice looked at. And I am not focusing on the 10 degrees alone, I'm focusing on the 10 degrees in context. The 10 degrees in context did the math for what they described. They said over and over again, this is a patentable method because it starts at 20 or more, and it finishes substantially cylindrical. That makes it move by 10 or more. That you could get without even Mr. Hyam, because they start at 20, they move into 4, and there's about 5 degrees of springback, so you end up moving about 10. In fact, if you go to the 30... Your Honor, we're already into there is a disclaimer. It is far more clear that that is what the specification and the... Yes, but we have to figure out what they clearly and unmistakably disclaimed. The fact that they've acknowledged that they did disclaim something isn't the same thing as they disclaimed 10% or more. The alternative explanation that they have now adopted is that the only thing they disclaimed is if it doesn't become substantially cylindrical. The prior art ended up in substantially cylindrical. The end result of the invention is the end result of the prior art. So by saying our invention disclaims anything other than becoming substantially cylindrical didn't differentiate its seeming method at all from the prior art. Why? You just said the prior art was substantially cylindrical. So they say, look, we're not substantially cylindrical. Why isn't that given out? And they just said they are. The end result of both. If you look in the seam canned end, if you look at these at the store, they have to stack. The very top that looks like that lip, that is the double seam. It's very small. It's very top. And the court will note it always goes up and down. It doesn't go out like an ice cream cone. It goes up and down. Mr. Heitz told you this morning that they agree that the end has to end up, after seaming, in a vertical, substantially cylindrical state. He agrees that that was disclaimed and he told you this morning. That is the end state, the after seaming. Given that the only difference now in seaming between the prior art and the invention is where you start. The prior art starts at 20 or less, so when it ends up being substantially cylindrical, it bends by no more than 10. And that's what Mr. Haim explained. He was the last step in tightening that, in explaining that math. In contrast, the invention, ending up substantially cylindrical, just like the prior art. So it ends up with this top part of the can end wall being pretty much vertical, just like the prior art. So that they've conceded, they've disclaimed, but it's not a distinction that they argued in the patent office. The thing that made their method of seaming different from the prior art is that because their can end wall was so much larger than the prior art, to get to that substantially cylindrical end point that the prior art had, and that Mr. Heist agreed this morning that their invention had as well, the patentable distinction that they argued throughout the file history and that is embedded in the specification everywhere that they describe this thing. It has larger than 20 and it has to move to substantially cylindrical. The difference is their method of seaming bends more than the prior art, much more than the prior art. Mr. Heim's 10 degrees is probably a conservative measure of that. I think we probably have your argument, Mr. Lewis. Thank you, Judge. Your Honors, there was nothing clear and unmistakable in the file wrapper. The district court's opinion at page 27 and 28, J.A. 558.98, 58.99, characterizes the argument in the patent office and it goes on and on with the argument that was made and then at the very end of a two-page discussion it mentions the 10 degrees. That's the part that was out of context. That's what the district court read into the claims. That was what the error was. I believe I heard counsel say that Crown said in its briefing in the original appeal that it wasn't disputing the 10 degree limitation. That's not really what we said. What we said was it wasn't an issue on appeal. So there was no express disclaimer in our brief. That there was no preservation of the issue either. But there was certainly no... There was no express disclaimer. What we said was we're not... that the issue was not an issue on appeal. You argued under the district court's claim construction and you said that there's a factual dispute given that interpretation and you didn't say for purposes of infringement we're reserving this issue and we reserve the right to argue that there's no 10 degree limitation. You certainly gave the impression that the 10 degree limitation was something that you were relying on and that you were maybe arguing in both ways but that you were relying on his claim construction to argue that there was a dispute to anticipation. Well, as I believe counsel said that this court had no need to resolve that issue. It certainly had the power to reach that claim construction if it wished. You didn't raise it. Why would the court resolve it? You didn't raise claim construction and you argued no anticipation under the district court's claim construction. I just don't see how you can come in now and ask for something different. How judicially inefficient would that be if we allowed that to happen? You get to argue the district court's claim construction when it suits you and then appeal it later? Well, Your Honor, this case is somewhat unusual in that the district court chose to decide this summary judgment motion, an omnibus motion, piecemeal. Obviously, if both the infringement and validity decisions had been made by the lower court at the same time we would be here and would have been arguing in one appeal what we're arguing today and we would have argued what we did before. We didn't ask for two bites at the apple. That's been thrust upon us by the posture in which this case reaches the court. And lastly, I believe I heard counsel say that if the court had decided the issue there would be a stopple. So to the extent a stopple is raised in their brief, the court, I submit, did not resolve the issue of the appropriateness of the 10-degree claim limitation and I believe there's been a concession that there has been no stopple because the court didn't resolve it. Thank you. Thank you, Mr. Heiss. Thank both counsel. The case is submitted. That concludes our session for today.